## Everts *v.* Chittendon.

In the Court below,

JOEL EVERTS, *Plaintiff ;* BERIAH CHITTENDON, *Defendant.*

The testator devised the use and improvement of all his real estate to his wife, until his son should arrive at the age of twenty-one years, she bringing him up ; and then devised to his son the whole of his real estate, except the

THIS was an action of ejectment for three pieces of land.

From the record the following facts appear : The plaintiff's father, *Joel Everts,* deceased, being seized of the demanded premises in fee, made his last will, wherein he bequeathed to his wife, *Mary Ann Everts,* the whole of his moveable estate, she paying his debts and funeral expenses. His real estate he devised in the following expressions : " I likewise give unto my said wife the use and improvement " of all my real estate, until my son, *Joel Everts* [then about

use and improvement as before disposed of, to be and remain to him an estate for ever : Held, that a fee, immediately on the testator's death, vested in the son, subject to a personal trust or confidence in his mother.

" five years of age] arrives at twenty-one years of age, (then
" she to have and enjoy the use and improvement of one
" third of said real estate during her natural life,) she, my
" said wife, bringing up my said son until he arrive at
" twenty-one years of age. *Item*, I give to my well beloved
" son, *Joel Everts*, the whole of my real estate, to be and
" remain to him an estate for ever, excepting the use to be
" disposed of as above mentioned." In the event of his
death before twenty-one years of age, or without heirs of
his body, the testator gave to his wife the use of all his
real estate during her life ; and devised the same after-
wards to *Gilbert Everts*, jun. his brother's son.

After the testator's decease, his widow entered upon the
demanded premises, and having intermarried with the de-
fendant, who has remained in possession ever since, she
died. *Joel Everts*, the plaintiff, is still a minor, and was sup-
ported and brought up by his mother, until her decease, and
by the defendant, ever since.

Upon these facts, the Superior Court determined in fa-
vour of the defendant.

*Daggett*, and *Allen*, for the plaintiff.

The question arising on this record, is, whether the in-
terest given to the mother of the plaintiff by this devise,
ceased at her death, that event happening before the plain-
tiff arrived at the age of twenty-one years ? We contend,
that it did ; and therefore, that the judgment below ought
to be reversed.

No one, on reading this will, can entertain a doubt as to
the *intention* of the testator. *Joel Everts* appears to be the
special object of his bounty. To him he devises his real
estate. To him he looked, as the person to stand in his
place regarding this property. The judgment complained
of, takes this estate for years from this *only* child, and gives

it to one who was alien an to the blood of the testator, and that upon the ground of the rules of law, though in opposition to the will of the father. Let us, then, see if there be such rules of law ; for we agree, that this will must not be so construed as to violate those rules.

Taking it for granted, that this estate clearly belongs to the plaintiff, unless he is divested thereof, by the devise to his mother, it is the duty of the defendant to shew himself entitled. The burden lies on him.

We will, then, attempt to answer the cases put, and claimed as decisive of this case ; and if we shew, that they fail of effecting the object, *Joel Everts* must recover ; for his title is undoubted, either at the death above mentioned, or at twenty-one.

The first case cited is *Boraston's case.* (*a*) There, the important words in the devise were, " and after the term of " the said eight years, the said upper part to remain to my " executors until such time as *Hugh Boraston* shall accom- " plish his full age of twenty-one years ; *and the mean pro- " fits to be employed by my executors towards the performance " of this my last will and testament.* The question was, whether the executor, after the death of *Hugh*, which happened at nine years, should hold the estate till *Hugh* would have been twenty-one. It was decided, that they should ; and upon the ground, and that a fund was created for the payment of debts, which should not be destroyed by the death of *Hugh*. That this was the point of the decision is manifest from inspecting the case ; and in *Lomax* v. *Holme- den*, (*b*) the Master of the Rolls considers it in the same light, but totally denies its application to this case, and decides on the principles for which we contend.

In 2d *Leonard* 221, and 3d *Leonard* 78, there are two cases precisely similar in their facts, and principles. " A. devised,

(*a*) 3 *Rep.* 19.                    (*b*) 3 *P. Wms.* 176.

" that his lands should descend to his son, but willed that his
" wife should take the profits thereof, till the full age of the
" son, for his education and bringing up.   The wife married
" another husband, and died before the full age of the son.
" WRAY and SOUTHCOTE, Justices, held, that the second
" husband should not hold ; for nothing was devised to the
" wife but a confidence."   Thus far, the case is in our fa-
vour ; but it is added, that their opinion would have been
different " if there had been a devise of the rents and pro-
" fits to the wife till the son was twenty-one, for that would
" have been a devise of the land."   Without inquiring into
the subtilty of this distinction, we observe, that this was
merely an *obiter* opinion ; and, in one of the cases, it was
an opinion expressed by WRAY only.

*Dedicott's case*, in 3d *Leonard* 9, is also cited.   That was
a *grant* to the wife *during the nonage of the heir*.   The
wife took another husband, and died.   It was holden, that
the husband should have the lands during the nonage of the
infant.—It is difficult to see how that case bears on this.
It depended on the grant, which was explicit, to the wife,
during the nonage of the heir, *without any condition*.   But
in our case, there is a condition, as is admitted.

In *Balder* v. *Blackborne*, (c) the devise was to the wife of
the profits of the land, to her own use, *without account*, pro-
vided she paid the *quit-rents and fines ;* and to the daughter,
and her heirs, at eighteen.   The wife married, and died while
the daughter was under eighteen.   It was resolved, that
the second husband should hold till the daughter became
eighteen.   In this case, fines and quit-rents were to be paid ;
the wife was to hold *without account ;* these circumstances
clearly distinguish it from our case.   In *Courthope* v. *Wey-
man*, (d) the devisor appointed *Matthew Robinson* his executor,
and directed, that he should receive and take the issues and
profits of the land *for and towards the maintenance of his
respective children, till they became of full age respectively.*

(c) *Hobart* 285.                    (d) *Carter* 25.

The question in this case was, whether *M. Robinson* had, by the will, a mere *trust, or an interest coupled with a trust ;* and it was decided, that he had an interest.  BRIDG-MAN, Chief Justice, at the close of the report, says, " Either " the executor, till twenty-one years, or the heir, must have " it ; if the heir, *'tis a fine case."* In this remark, there is a clue to many of the cases on this subject.  The eldest son being sole heir to the estate, will take immediately on the death of the person to whom the estate has been devised to pay debts, educate younger children, &c. unless the will is so construed as to give the estate to the executor or trustee for such purposes.  The courts, therefore, have leaned to such construction, and with great propriety.

*Taylor* v. *Biddall,* (e) is cited against us.  The point de-cided in that case was, that where an estate is given to A. for so long time, and until his son B. attain the age of twen-ty-one ; and after that to B. in fee, and if he die before twenty-one, then to the heirs of the body of C. the father of B., and their heirs for ever ; A. takes an estate for years, and the remainder in fee is immediately vested in B.—This doctrine does not, in any degree, militate against the prin-ciples for which we contend ; and NORTH, Chief Justice, in giving his opinion, sanctions the rule as we admit it, *viz.* that where a fund is created for the payment of debts, &c. it shall not be defeated, if the person to whom the estate was to go had not, at his death, attained the age, at which, by the will, he was to take possession.

The foregoing are the cases on which the judgment of the Superior Court is justified.  Not one of them supports that judgment.  The distinctions are obvious.

In 1 *Eq. Ca. Abr.* 194, 195, *pl.* 2, 3, 4.  2 *Eq. Ca. Abr.* 363, *pl.* 13.  8 *Vin. Abr.* 291, *pl.* 13.  *Pow. on Dev.* 301, 302.  *Willes* 301.  *Cro. Eliz.* 252.  3 *P. Wms.* 176, and

(e) 2 *Mod* 289.

*Gilb. Eq. Rep.* 36—this doctrine is considered, and the distinction is taken on which we rely.

It is urged, however, that this devise to the wife is not of a trust merely, but an interest ; and that the confidence is subject to the interest ; and that it might, therefore, well go to her husband as a chattel. We have already said, and of this there can be no doubt, that she took an estate for life upon *condition* that she brought up this child. Had she refused to perform the duty assigned to her, by the will, it would be too much to say, that she should enjoy an estate given to her with such a clause, *viz.* " *she bringing up my said son Joel,*" &c. What is the duty here enjoined ? *Bringing up* a child is an expression in common use : it plainly imports the performance of all the high duties of a parent regarding the interests of a child. Can such a trust be assigned ? Did this testator intend, that the *bringing up* of this child might be committed to a stranger, and he enjoy the property ?

*Sterling*, and *Gould*, for the defendant in error.

The remainder, limited to *Joel*, the plaintiff, though vested in interest, cannot vest in possession, till the time, when he will, by computation, attain full age. Till that time, the whole estate is devised to his mother ; who took a beneficial interest, for *so many years*, as he was under full age, at the testator's death. A devise to A. *until* B. attains the age of twenty-one years, remainder to B. in fee, gives A. a term for years, which continues, till B. would, if living, arrive at that age : The word, " until," being a description of the *time, when* the limitation to B. shall take effect in possession. *Boraston's* case, (*g*) *Hayward* v. *Whitby*, (*h*) *Taylor* v. *Biddall.* (*i*) And there is not an authority, nor a *dictum* in the books, to prove, that in such a case, the death of the first devisee, before that time, determines his estate. *De-*

(*g*) 3 *Co.* 19. (*h*) 1 *Burr.* 228.
(*i*) 2 *Mod.* 289. *Fearne* on *Con. Rem.* 167, 171, 488.

*dicot's* case (*k*) is precisely in point, except for a circumstance, which makes it the stronger, *viz.* that it was the case of a *grant*, instead of a devise. Does, then, the clause, in the devise to the plaintiff's mother, " She bringing up " my said son *Joel*," &c. so distinguish the principal case from the one supposed, as to accelerate the enjoyment of his remainder, in the events, which have happened ?

The proposition to be supported for the defendant, is, *That the interest, first devised to the plaintiff's mother, was not determined by her death.* For, that she took an *interest*, as contradistinguished from a *naked authority*, cannot be questioned.

In *Boraston's* case, (*l*) there was a devise to executors, *until such time as H. should accomplish his full age ; the mesne profits to be employed towards the performance of the will;* remainder to H. and his heirs. H. died at the age of nine years, and the question was, whether the interest of the executors was determined by his death, within age ? It was decided, by the whole court, that " the executors had a good " term for *twelve years*, which was not determined by the " death of H,"—twelve years being the difference between the age of twenty-one, and the age at which he died. This is recognized as a leading authority, in all the subsequent cases; and though not in point, serves to explain the general nature of a devise to one person, *till* another arrives at a certain age.

But it is contended, that the fund, created for the " performance of the will," was the ground of the determination in *Boraston's* case. How is this discovered ? It certainly does not appear from the report, that that consideration had any influence whatever in the decision. In *Lomax* v. *Holmedon*, (*m*) indeed, the Master of the Rolls supposed, that the distinction was material between cases, in which there is such a fund provided, and those, in which there is not. His

(*k*) 3 *Leon.* 9.                    (*l*) *Ubi, ante.*
(*m*) 3 *P. Wms.* 176.

observations upon the subject are, however, not only *obiter*, but expressly applied to a different *event* from that, which raises the present question. In that case, there was a devise to the testator's daughters, *they paying his son C. 200l. per annum, until his age of forty years*, with remainder to his son C. for life, &c. and FROM and AFTER the *death* of C. remainder over. C. died under the age of forty; and the point decided was, that the remainder over took effect in possession, immediately upon HIS death. But the remainder was there expressly limited to take effect *from* and *after* the death of C. It is perfectly clear, therefore, that that case is inapplicable to the question: And what is said *obiter*, by the Master of the Rolls, as to the effect of a fund for the payment of debts, relates, in terms, to the supposed event of the death of the *remainder-man*, and not of the *first* devisee. If it should be objected, that in the principal case also, the estate is ultimately limited to *Gilbert*, on the death of the plaintiff's mother; the obvious answer is, that the event contemplated in that limitation, is that of her dying, *after* the death of *Joel* without issue.

The case of *Mansfield* v. *Dugard* (n) is also foreign to the question. There, land was devised to the testator's wife, till his son should attain to the age of twenty-one years, remainder to the son. No fund was created for the maintenance of the son, or for any other purpose. HE died at the age of thirteen; and it was holden, that the wife's interest determined on his death.—Without inquiring, how far this determination is conformable to the *principles*, established in other cases, (for, in point of *precedent* it is distinguishable from all others) it is sufficient to observe, that the decision does not affect the question under discussion. If, in the present case, the plaintiff had died within age, and his mother had survived; the *events* in the two cases might, indeed, compare: But the cases themselves would still be dissimilar in other respects.

(n) 1 *Eq. Ca. Abr.* 195. S. C. *Gilb. Eq. Rep.* 36. S. C. 8 *Vin. Abr.* 291,2.

*Neal* v. *Hanbury* (*o*) was decided expressly upon the ground, that the bequest, and the condition annexed to it, were both strictly personal ; and that the latter was in its nature, and necessarily, so.   Whether the claim of the defendant is liable to the same objection, will appear, from several of the authorities, which remain to be cited.

That the devise to the plaintiff's mother was of an *interest*, is not denied.   To deny it, would be to assert, that the *whole* estate was in the plaintiff on the testator's death.   The distinction is well settled between the devise of a *power* over the subject, and a devise of the subject *itself* for a limited time. (*p*)   The interest thus devised to the mother, is a chattel real, which, though connected with a confidence, is, in its nature, transmissible ; and that it did not determine by her death, is abundantly proved by that class of cases, which establishes the distinction between an authority, coupled with an *interest*, and a *naked* authority.

*Powell*, when explaining this distinction, (*q*) and with a full knowledge of the cases, makes use of these words : " If " one devise the profits of his land unto his wife, until his " son be of age, to bring up and educate *him* ; this is a confi- " dence, coupled with an interest."   " And in all these cases " of *interests*, the estate shall not determine, *until* the time " limited, &c.   *And if the* DEVISEE *in such cases* DIE, *his re-* " *presentatives shall have the land during the time.*"—The rule, thus laid down by this great lawyer, is founded not upon any supposed distinction between cases, in which there is a fund created for the payment of debts, or the support of younger children, or any similar purpose, and those, in which there is none ; but upon the nature and properties of the thing devised—upon the distinction between an *interest* and a *naked authority*.   And upon this distinction all the cases, which compare with the present, proceed.—Thus, where A.

(*o*) *Prec. Cha.* 173.
(*p*) *Mo.*774.   *Dy.* 36*b*.   *Cro. Eliz.* 678, 734, 252.   *Dy.* 219.
(*q*) *Essay on Dev.* 301, 2 1*st edit.*

devised, that " his lands should *descend to his son*, but that
" his wife should take the profits till his full age, for his ed-
" ucation and bringing up," the wife having married a second
husband, died before the full age of the son ; and it was de-
termined, that the second husband should not have the pro-
fits of the land, till the son should obtain full age : " For,
" nothing is devised to the wife but a *confidence*," (i. e. a bare
authority) " and the same *confidence* cannot be transferred to
" the husband ; BUT CONTRARY. *if he had devised the profits*
" *of the land to the wife, until the age of the infant, to bring him*
" *up and educate him ; for that is a devise of the land itself.*" (r)
There is a case, precisely similar to this, 3 *Leon.* 78, in which
WRAY, Ch. J. says, " If the husband had devised the profits
" of the land to the wife, until the age of the infant, to bring
" him up and educate him ; the same amounted to a devise
" of the *land*, and so a chattel in the wife, which *would accrue*
" *to the husband.*" In these two cases, the express and sole
ground of decision was, that the devise to the wife was of
a mere confidence, or naked authority, and not of an *interest :*
And though the concluding remarks, in both of them, are
but *dicta*, they are *dicta in point*, which cannot be said of the
*obiter* remarks of the Master of the Rolls, in *Lomax* v. *Holme-
don.*

In *Courthope* v. *Heyman*, (s) there was a devise of the
profits of land to M. R. the executor, " for and towards the
" maintainance" of the testator's respective children, " till
" the said children did attain to their respective ages." Be-
fore they all arrived at full age the executor died ; having
devised the residue of the term to *his* executors ; and it was
decided, that the interest devised to him, was not determin-
ed by his death, but well vested in his executors. It is ob-
jected, that the ground of this decision was, the provision
made for the maintenance of *younger children.* According
to the report of the case, however, the judgment turned up-
on the sole question, " whether M. R. had a TRUST, or
" whether an INTEREST, by the will ?" If this consideration

(r) 2 *Leon.* 221.          (s) *Cart.* 25.

1806.

EVERTS
*v.*
CHITTEN-
DON.

EVERTS
*v.*
CHITTEN-
DON.

furnished the rule of decision, it is clear, that the judgment must have been the same, if the fund had been created in favour of the heir at law only. Besides, BRIDGMAN, Ch. J. cites, in his argument, towards the end of the report, (*t*) two cases, which are very strong to prove, that the circumstance of a fund's being created for the support of *younger children*, is no criterion in questions of this kind.

The case of *Smith* v. *Havens* (*u*) is precisely in point, unless the circumstance of the provision, made for younger children, governed the decision. In that case, J. S. " devised, " that if his wife think good to bring up his children, &c. that " then she shall have his lands, till his son J. S. attain to his " age of twenty-four years." The wife died before the son arrived at that age : And it was resolved, that that event did not determine her estate. Now, that the provision made for the children was *not* the ground of the judgment, appears expressly from the report ; in which it is said, " THE ques- " tion was, if this was only a matter of *confidence*, or of an " *interest also* in the land ?" This was the precise point, on which the case was decided.

But the case of *Balder* v. *Blackburn* (*v*) admits of no such objection, as that last mentioned, and is, we conceive, an unanswerable authority for the defendant. There J. W. devised the profits of his lands to his wife, to her own use, without account, till his daughter should arrive at the age of eighteen ; provided the wife should pay the quit-rents and fines, and keep and bring up the daughter, &c. remainder to the daughter in fee. The wife took a second husband, and died, before the daughter attained the age of eighteen. The court held, that this was " a plain *term*, given to the wife, to " her own use, which ACCRUES to the HUSBAND ; and the " keeping and education of the child is not of such particu- " lar privity, but it *may be performed effectually* by another."

(*t*) *Cart.* 27.
(*u*) *Cro. Eliz.* 252.
(*v*) *Hob.* 285.

Here was no fund for the payment of debts, for younger children, or for any other purpose, than that of maintaining the *devisee in remainder*. It is urged, however, that this case is distinguishable from that now before the Court, by the words in the devise, " to her own use, without account," and by the wife's being obliged to pay the quit-rents and fines. But the words " to her own use," &c. can have no other effect, than to manifest the testator's intention, that the wife should take a *beneficial interest*; and it is not denied, that such an interest was given to the plaintiff's mother, in the principal case. *She* took an estate " to her own use;" nor was she liable to *account*, in any sense, in which the wife in the case cited was not so. The quit-rents and fines were *nominal* charges; but if they had been of any real considera-tion, the only possible effect of the provision, that the wife should pay them, would be to fortify the conclusion, before mentioned, that the testator intended to give her a benefi-cial interest.

It is still objected, that, as the *condition*, annexed to the term, devised to the plaintiff's mother, (*She bringing up my said son Joel*) cannot now be performed by *her*, the term is forfeited. But it should be remembered, that when a con-dition subsequent becomes impossible, by the act of *God*, the estate is not divested by it. (*w*) In the present case, however, the condition has not become impossible. It may still be performed, as it has been, by the defendant. The charge of maintaining the plaintiff devolves with the inter-est, to which it is annexed. And to the objection, that the trust is in its nature personal, and cannot be transmitted, it is, surely, a sufficient reply, that such a trust, when created in favour of younger children, is *admitted*, by the argument for the plaintiff, *to be transmissible*. But, the cases of *Smith* v. *Havens*, *Courthope* v. *Heyman*, and *Balder* v. *Blackburn*, even according to the construction, given to them by the plaintiff's counsel, furnish a direct and decisive answer to both these objections.

(*w*) *Co. Lit.* 206. *2 Black. Com.* 156,7.

BY THE COURT. The questions raised on this record are, whether a fee, immediately on the testator's death, vested in his son, the plaintiff in error, *subject to a personal confidence or trust reposed in the mother*, which ceased at her death ; or, whether the devise to *Mary Ann Everts* was of a term for years, limited by the period in which her son should attain, or, if he should die before, might have attained, had he lived, twenty-one years of age. The former, in our opinion, is the true construction of the will.

There is no rule better established, than " that the inten-
" tion of the testator expressed in his will, if *consistent with*
" *the rules of law*, shall prevail."

In the expression of the intention, as Lord HARDWICKE truly said in *Bagshaw* v. *Spencer*, (*x*) there can be no magic or particular force in certain words, more than in others ; their operation must arise from the sense they carry ; and that sense can only be found, by considering the whole will together.

What the intention of the testator was, it is not difficult to discover. For his wife he had made provision, by a bequest of all his moveable estate, and a devise of the one third of all his real estate, during her natural life. This, according to the general practice of our country, and the law for the distribution of intestate estates, was, at least, a reasonable disposition of property for the support of his wife ; and it is no unfounded presumption, that it was so considered by the testator.

At the making of the devise, *Joel Everts*, the testator's only son, was about five years of age. What more reasonable, than that the testator should commit him to the guardianship of his mother, and give to her the improvement of

(*x*) *Canc.* 12 *Nov.* 1748. Reported 1 *Ves.* 142, and 2 *Atk.* 246, 570, 577. Cited by BULLER J. in *Doug.* 341, *Hodgson* v. *Ambrose.*

his estate, to maintain, protect, and educate him ? Accordingly, it appears, that the testator gave to his wife the use and improvement of all his real estate, until his son should arrive at twenty-one years of age, " *she bringing him up.*" The specific phraseology, " *she* bringing him up," limits the trust to the *wife personally ;* and an expression more exclusively appropriate to this object, could not have been selected.

The manifest intent of the testator collectable from his will, in our judgment, may be thus expressed. The use and improvement of one third part of my real estate I give to my wife, *for her personal benefit*, so long as she shall live ; and if my son should die without issue of his body, before he attains twenty-one years of age, she shall have the use of all my estate. But if my son shall live, *during his minority*, his mother shall be his guardian ; and to enable her to fulfil the duties of this relation, she shall receive, without account, the rents and profits of my estate not above disposed of. Subject to this trust, it is my will, that all my property shall vest in my son *Joel*, and be his for ever.

Conformably with this construction, the real estate devised was not a term in *Mary Ann Everts*, but a *mere personal trust or confidence*, which ceased at her death. In other words, a fee, immediately on the testator's death, vested in his son, subject to a personal trust or confidence reposed in his mother.

The intention of the testator is collectable, from the apparent purpose, for which the use of his estate, during his son's minority, is given to his mother. It is collectable, from the reasonableness of it, the duty of *M. A. Everts*, and the means of performance, being designedly commensurate. And as the construction given is forced upon the mind by every consideration, arising from the relation of the parties, and supposable views of the testator ; so it is indispensably necessary, to avoid the most obvious absurdity.

1806.

EVERTS
*v.*
CHITTEN-
DON.

For, who can believe, that the testator *intended* to bequeath his son to an *unknown guardian*, and to grant to him the improvement of all his estate, as a compensation for his services? This, unreasonable as the supposition is, presents but a partial view of the subject. For, on the construction contended by for, the defendant, it might happen, that the mother and son having died, for fifteen years or more, the testator's estate should be enjoyed, by aliens in blood. In the mean time, his brother's son could take no benefit of it, although he is the declared object of the testator's bounty.

The intention of the testator having been ascertained, there is an end to all further inquiry, as no rule of law will be violated by carrying it into effect.

" In the construction of wills, adjudged cases may very pro-
" perly be argued from ; if they *establish general rules of*
" *construction, to find out the intention of the testator.*" (*y*) But,
" 'tis so plain upon the true intent and meaning of this will,
" that it is quite unnecessary to cite cases upon it."

Of those which, on the argument, were adduced, some notice, however, shall be taken, as they most strikingly confirm the construction which has been given.

In the second and third volume of *Leonard's* reports, there are two anonymous cases, (*z*) of which the following is a statement :

A. devised, that his land should descend to his son, but that his wife should take the profits until his full age, " *for*
" *his education and bringing up.*" The wife married, and died. It was resolved, that the second husband should not have the profits. " *Nothing is devised but a confidence*, and
" the wife is a guardian or bailiff to the infant." The parallel

(*y*) 1 *Burr.* 233, *Hayward* v. *Whitby.*
(*z*) 2 *Leon.* 221, and 3 *Leon.* 78, determined *annis* 1574 and 1579.

between these cases and the principal one is so obvious, as to render all observation superfluous.

The next case cited was that of *Lomax* v. *Holmeden*. (*a*) Mr. *Lomax*, by will, devised all his lands and tenements to a trustee, and his heirs, to the use of his wife for life, she paying 200*l. per annum* to the testator's son, *Caleb Lomax*, until his age of forty years ; and in case the wife should die before that period, then to his daughters, and their heirs, they paying the same sum unto *Caleb Lomax*, until his age aforesaid : " The testator hoping, that his *son Caleb would, by that time, have lived to see his folly.*" After which, the testator devised the premises to *Caleb* for life, and from and after his death, to the use of his first son, and the heirs male of his body. The testator died ; the wife also died, *Caleb* married, and had a son, (the plaintiff,) but died before his age of forty years. The bill was brought for an account of the profits of the premises, from the death of *Caleb*, the plaintiff's father ; and the question was, whether the estate devised to the testator's daughters should subsist, now *Caleb* was dead, until such time as he should, had he lived, have attained to his age of forty ?

It was argued by the defendants, (the daughters) that the devise created an absolute title and interest in them, until their brother should have attained forty years of age, had he lived so long. But the Master of the Rolls, (Sir Joseph Jekyl) after time taken to consider of it, and having mentioned and commented on the cases cited, decreed, that this estate, devised to the testator's daughters, and their heirs, determined on the death of *Caleb ;* and that agreeably to all common sense and reason, the interest devised must cease, when it became impossible for him to arrive at the age of forty. For, taking it literally, that the daughters should enjoy the land until *Caleb* should attain to his age of forty, this would be to make them hold forever, because *Caleb*, having

(*a*) 3 *P. Wms.* 175 before Sir Joseph Jekyl, Master of the Rolls, *anno* 1732.

X x

died before that age, could never afterwards attain to it. If, however, the estate or interest were created for a particular purpose, as to constitute a fund for payment of debts ; (which was *Boraston's case*) there, since the sons might die the next day, or soon after the testator, it would be very hard that such an event, occasioned purely by the act of God, should defeat the fund provided on purpose for the benefit of creditors : and therefore, *in aid of the honest intention of the testator*, who may be supposed to have computed the time wherein the profits of the estate would be sufficient for that end, the judges, by a liberal interpretation, have concluded, that the devisor meant, that the devisee, or executor, should have the land, for so long time, as the son, if he had lived, should have arrived at the age mentioned ; " *but in all cases* " when no such intention appears, the estate or interest " would absolutely determine by the death of the party un- " der the age specified in the will. That such construction " seemed the more just in the present case, as the reason ap- " peared why the testator created this interest by his will, " until his son should attain to the age of forty years, name- " ly, in order to guard the estate against the ill conduct and " extravagancy of his son, the will saying, the testator " *hop-* " *ed, by that time, his son would have seen his folly.*"

This determination of a case, in several respects very similar to the principal one, is forcible to show, that *Mary Ann Everts* had no term for years in the estate devised ; and that the testator, intending merely to put his son under the guardianship of his mother, it is fit that his last will should be construed, *in subserviency to that object*.

The case of *Mansfield* v. *Dugard* (*b*) clearly evinces, that the wife of the testator ( *M. A. Everts* ) had no term in the demanded premises. It was a devise to the wife of the testator, till his son and heir apparent should attain twenty-one years of age, and *then* to his son. The son died at thirteen

(*b*) 1 *Eq. Ca. Abr.* 195, *pl.* 4. *Hil. Term,* 1713. S. C. *Gilb. Eq. Rep.* 36.

years old, and the wife continued to possess the estate until her son, had he lived, would have been twenty-one years of age. On a bill brought by the heir at law, against the wife, for an account of the profits after her son's death, it was decreed accordingly ; although the wife was executrix, yet the estate not " having been *devised for payment of debts,* " nor any creditors or want of assets appearing, it was held " by the Lord Chancellor, that the wife's estate determined " by the death of the son, *and that the remainder vested pre-* " *sently in the son upon the testator's death, and was not to ex-* " *pect, till the contingency of his attaining his age of twenty-one* " *years should happen."*

All the cases prove, that the estate of *Joel Everts*, in the property devised, did not remain in contingency, until his coming of age, but vested immediately in him, on the death of the testator. To this purpose the judgment of the court in *Hayward* v. *Whitby*, (c) is explicit. In that case, the testator devised his messuages and tenements to *Thomas Hayward* and *John Bates*, and the survivor of them, and the heirs of the survivor, in trust, to employ the rents and profits thereof, for the maintenance, education, and bringing up of *Thomas and John Hayward, during their minorities :* and when and as they should respectively attain their ages of twenty-one, then to the use and behoof of them the said *John* and *Thomas* and *their heirs equally*. *Thomas* died before the age of twenty-one. The heir at law *( Whitby )* entered into possession of his moiety ; and *John*, now of age, brings ejectment, claiming the moiety of his deceased brother, as well as his own proper moiety. The question was, whether the estate vested *immediately* in the two nephews, upon the death of the testator, or remained in contingency, till their coming of age respectively ? The Court were of opinion, that the estate immediately vested in the two nephews ; and that there was no limitation of their interest, but *only a limitation of the trust during their minority*. In other words, that it

(c) 1 *Burr*, 228, *Hil. Term*. 1757.

was an immediate gift to the two nephews, with a trust to be executed for their benefit, during their minority.

The same expression, with an alteration peculiarly adapted to the principal case, expresses our opinion on the manner and effect of its application.    The testator gave to his son *Joel Everts* his estate immediately on his death, with a trust in his mother *Mary Ann Everts, to be executed for the benefit of her son, during his minority, if she should so long live.*

Cases have been cited for the defendant in error, under the impression, that they established a *term* in the mother, by virtue of the devise, limited by the time when *Joel Everts* should, or might, attain the age of twenty-one years.   A little attention will show, that they do not support the purpose for which they were adduced.   Waiving all observation on the peculiar phraseology of some of them, which was one ingredient in their determination, it is sufficient to remark, that they differ from the principal case in these particulars :  either they were devises of property until the principal devisee should attain a certain age, *without any expression which would even imply a limitation of the period in any possible event ;* or, superadded to the bequest, they evinced, *that the testator designed,* for the payment of his debts, or other reasonable cause, that the devisee should be vested with an interest in the devised premises, until the time mentioned should expire.   In other words, the cases effectuate the *manifest intent* of the testator.

In the first class of the decisions referred to, may be comprised *Dedicott's case,* (*d*) and *Taylor* v. *Biddall.* (*e*)  The former was a devise to the testator's wife, during the *nonage of his heir ;* and the latter, a devise to A. until B. should attain twenty-one, and *after that* to B.   Nothing is there to shew, that the testator placed the estate in the hands of the

(*d*) 3 *Leon.* 9, *Mich. Term.* 1567.
(*e*) 2 *Mod.* 289, *Hil.* 29 *& 30. Car.* 2. in *C. B.*

devisee, for the purpose of *maintaining* and *educating* his son, or with any other intent, *than for her sole and exclusive use and enjoyment.*

In the other class, may be included *Boraston's case*, (*f*) *Balder* v. *Blackburn*, (*g*) *Courthope* v. *Heyman*, (*h*) *Stile* v. *Thompson*, (*i*) and *Smith* v. *Havens*. (*k*)

In the case first mentioned, as was justly observed in *Lo-max* v. *Holmedon*, the devise created a fund for the payment of debts ; and to accomplish this object, it is clear the testator *intended*, that the devisee should hold this estate, until the expiration of the time limited. *Balder* v. *Blackburn* was a devise to the wife, until the daughter should attain eighteen years, without account, and she paying fines and quit-rents. The latter expression unquestionably indicates *the intention* of the testator. In *Courthope* v. *Heyman*, the testator appointed *M. Robinson* his executor, to take the rents and profits of his land, for, and towards, the *maintenance of his respective children, till they became of full age respectively.* The executor died before the trust was completed, and his executor was adjudged to have an interest in the land *until the purpose of the testator was accomplished.* *Stile* v. *Thompson* presents the case of a devise to executors, until the full age of the heir, to *pay debts and legacies*, and to *educate children.* And the case of *Smith* v. *Havens* was a devise to the wife, until the testator's son should attain twenty-one years of age, " *to bring up his children.*"

A particular comment on every case cited is obviously needless. Sufficient it is to remark, that the devises, upon the face of them, bear incontrovertible marks of the testator's *intention*, and that the construction given was requisite to *effectuate it.*

(*f*) 3 *Rep.* 19, *Hil.* 29 *Eliz.* in *B. R.*
(*g*) *Hob.* 285, *Trin.* 17 *Jac.* 1.
(*h*) *Cart.* 25, *Trin.* 17 *Car.* 2 in *C. B.*
(*i*) *Dyer* 210, *pl.* 24, *Hil.* 4 *Eliz.*
(*k*) *Cro. Eliz.* 252, *Mich.* 33 & 34 *Eliz.* in *B. R.*

Finally : The *intention* of the testator in the principal case warrants the claim of his son ; there is no rule of law violated by permitting it to prevail ; and the cases cited are in entire coincidence with our opinion. Of consequence, the judgment of the Superior Court, in this case, must be reversed.